

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF One blue Samsung smartphone seized from Antonio FLORES, on May 1, 2023, maintained by the Chesterfield County Police Department | Case No. 3:23-sw-**81** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Special Agent Matthew Taylor, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. The affiant is a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Sections 841(a)(1) and 846. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since May of 2005. I was trained as a DEA Special Agent at the DEA Academy in Quantico, Virginia. During my sixteen-week training, I received specialized training in the Controlled Substances Act, Title 21 United States Code, including, but not limited to, Sections 841(a)(1) and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations. I received training related to criminal organizations engaged in conspiracies to manufacture and/or possess with intent to distribute marijuana, cocaine, cocaine base, heroin, methamphetamine, and other dangerous drugs prohibited by law. I received training regarding the Fourth Amendment and search and seizure law. I was also trained in

Confidential Source (CS) management and investigative techniques, and numerous other facets pertaining to the criminal investigation of illicit drugs.

2. I have received extensive training in the investigation and detection of controlled substance traffickers. I have conducted and assisted in investigations into the unlawful possession and possession with the intent to distribute controlled substances, and their associated conspiracies in violation of Title 21, United States Code, Sections 841(a) and 846. I have participated in the preparation and execution of numerous arrest and search warrants for criminal offenses involving the distribution and conspiracy to distribute controlled substances. I am aware that cocaine is a Schedule II Controlled Substance. I am familiar with the methods traffickers use to conduct their illegal activities to include communication methods, vehicles, text messaging, asset management, and narcotics transactions. I know that traffickers utilize communication devices, like smartphones and cellular telephones, to plan, control, and execute the illicit activities of a drug trafficking conspiracy in cooperation of other co-conspirators.

3. During the course of my employment as a DEA Special Agent, I have participated in numerous criminal investigations and have gained knowledge and experience by working with other Detectives and Agents. I have participated in Federal and State search warrants involving the seizure of the aforementioned listed controlled substances, the seizure of records relating to the manufacturing and distribution of controlled substances, and other types of evidence documenting the activities of drug trafficking organizations (DTO) and their members. I have utilized numerous investigative techniques and resources and draw on the experience, techniques, and resources I have gained in my employment as a Special Agent.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other sworn law enforcement officers. This affidavit

is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is: (1) **one blue Samsung smartphone** seized from Antonio FLORES, on May 1, 2023, maintained by the Chesterfield County Police Department (hereinafter referenced as the SUBJECT DEVICE). The SUBJECT DEVICE was seized on May 1, 2023, by CCPD Detective David Colvin, from Antonio FLORES subsequent to a traffic stop.

6. The SUBJECT DEVICE is currently stored by the CCPD evidence custodian.

7. The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

## TECHNICAL TERMS

8. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. **Smartphone:** A portable personal computer with a mobile operating system having features useful for mobile or handheld use. Smartphones have become commonplace in modern society in developed nations. While the functionality of smartphones may vary somewhat from model to model, they typically possess most if not all of the following features and capabilities: 1) place and receive voice and video calls; 2) create, send and receive text messages; 3) voice-activated digital assistants (such as Siri, Google Assistant, Alexa, Cortana, or Bixby) designed to enhance the user experience; 4) event calendars; 5) contact lists; 6) media players; 7) video games; 8) GPS navigation; 9) digital camera and digital video camera; and 10) third-party software components

commonly referred to as "apps." Smartphones can access the internet through cellular as well as Wi-Fi ("wireless fidelity") networks. They typically have a color display with a graphical user interface that covers most of the front surface of the phone and which usually functions as a touchscreen and sometimes additionally as a touch-enabled keyboard.

    b.    **IP Address**: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the internet must be assigned an IP address so that internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    c.    **Internet**: The internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the internet, connections between devices on the internet often cross state and international borders, even when the devices communicating with each other are in the same state.

9. Based on my training, experience, and research, I know that the SUBJECT DEVICE has capabilities that allow them to access the internet and serve as a smartphone.

## PROBABLE CAUSE

10. Based on my training and experience, what I have learned from other law enforcement officers, and the facts set forth in this affidavit, I submit that there is probable cause that the SUBJECT DEVICE contains evidence regarding violations of Title 21 U.S.C. §§ 841(a)(1) and 846.

11. In November 2022, the Drug Enforcement Administration (DEA), and investigators with the Chesterfield County Police Department (CCPD), began investigating Antonio FLORES ("FLORES"), who was a member of a drug trafficking and money-laundering organization and involved with the attempted remittance of bulk U.S. currency, believed to be drug proceeds. During a surveillance operation on November 21, 2022, I and my investigative team observed FLORES and Juan ALVARADO take a box from his residence in Prince George County, VA, and deliver it to a hotel where FLORES met with an individual, later identified as Edgar Orlando MENDOZA Munoz ("MENDOZA"). FLORES and MENDOZA carried the aforementioned box into the hotel while ALVARADO remained in his vehicle. After several hours, FLORES left the hotel with the box and he and ALVARADO drove out of the area. A traffic stop was conducted on FLORES and ALVARADO, and during the investigative detention investigators learned that FLORES and ALVARADO had delivered approximately $250,000 in U.S. currency to MENDOZA. After determining which hotel room MENDOZA was staying in, I and the investigative team were able to seize the suspected drug proceeds.

12. In April 2023, the investigative team initiated a Title III investigation of a telephone used by Luis Alejandro CRUZ Mota ("CRUZ"). CRUZ was a close drug trafficking and money laundering associate of FLORES. CRUZ lived with FLORES at 7429 Allstate Drive in Prince George, VA. During interceptions of CRUZ's telephone, investigators heard CRUZ speak with known drug traffickers about the distribution of suspected cocaine.

13. On May 1, 2023, during an intercepted call between CRUZ and Aaron HEATH, who is a known drug trafficker, the investigative team understood CRUZ to tell HEATH he (CRUZ) believed a shipment of forty (40) kilograms of cocaine was about to arrive. I and the investigative team then established surveillance at the FLORES/CRUZ residence in Prince

George. Investigators followed FLORES and CRUZ, who were driving a Toyota sedan, from the residence until they arrived at a Pilot Travel Center, located off Route 460 in Disputanta, VA. While at this location, FLORES and CRUZ briefly met with a driver of a tractor/trailer. The driver of the tractor/trailer was later identified as Carlos Alfonso GONZALEZ ("GONZALEZ"). Investigators observed FLORES and CRUZ receiving three bags from GONZALEZ. GONZALEZ took these bags from the cab of the tractor and FLORES and CRUZ placed these bags into the trunk of the Toyota sedan.

14.     FLORES and CRUZ got into their car and GONZALEZ got into his truck. Both vehicles then drove out of the truck stop and were followed by the investigative team. CRUZ, the driver of the Toyota sedan, with FLORES in the front passenger seat, drove for a short distance after leaving the truck stop when DEA Task Force Officer ("TFO") Godsey from CCPD conducted a traffic stop on the Toyota sedan. TFO Godsey, working with his drug detection canine, conducted a free air sample around the Toyota. The canine alerted to the rear of the Toyota. After a short search of the trunk, three bags were located and found to contain forty bricks consistent with contraband bricks of cocaine. FLORES and CRUZ were then arrested and placed into custody in Chesterfield County. The SUBJECT DEVICE was seized from FLORES at this time. The SUBJECT DEVICE was inside the vehicle at the time of the stop and confirmed to be FLORES' phone by the detective on scene.

15.     During post-arrest interviews, both FLORES and CRUZ admitted they were involved in the trafficking of illegal drugs. When asked about the November 21, 2022 seizure of the $250,000 U.S. currency mentioned above, CRUZ stated an additional $250,000 U.S. currency was still at FLORES' and CRUZ's residence along with ten (10) kilograms of cocaine. CRUZ

also stated that two (2) firearms were presently located within the residence. CRUZ then consented to a search of the residence at 7429 Allstate Drive in Prince George, VA.

16. During the search of the residence, the investigative team found two (2) handguns, plastic bags consistent with kilogram drug wrappers, and multiple cellular telephones. Based on my training and experience, the recovered items are indicative of an ongoing criminal drug enterprise.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

18. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICE was used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICE because:

  a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

  b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

7

      c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

      d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire media, that might expose many parts of the SUBJECT DEVICE to human inspection in order to determine whether they are evidence described by the warrant.

20.    *Manner of execution.*  Because this warrant seeks only permission to examine the SUBJECT DEVICE that is already in law enforcement's possession, the execution of this warrant

does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

21.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICE described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Matthew Taylor
Special Agent
Drug Enforcement Administration

Reviewed and approved by AUSA Shea Gibbons

Subscribed and sworn to before me on the _26_ day of May 2023.

/s/ AtS
_____
The Honorable Summer L. Speight
United States Magistrate Judge

## ATTACHMENT A

1. The property to be searched are: (1) **one blue Samsung smartphone** seized from Antonio FLORES, on May 1, 2023, maintained by the Chesterfield County Police Department (hereinafter referenced as the SUBJECT DEVICE). The smartphone is referred to as the SUBJECT DEVICE in this affidavit.

2. This warrant authorizes the forensic examination of the SUBJECT DEVICE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.  All records on the SUBJECT DEVICE described in Attachment A that relate to violations of Title 21 U.S.C. §§ 841(a)(1) and 846 relating to the distribution of controlled substances, including:

    a. Any and all address books, names and lists of names and addresses of contacts;

    b. Any and all diaries, notebooks, notes, and other records reflecting physical contacts;

    c. Evidence of who used, owned, or controlled the SUBJECT DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondences;

    d. Evidence of software that would allow others to control the SUBJECT DEVICE, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    e. Evidence of the lack of such malicious software;

    f. Evidence of the attachment to the SUBJECT DEVICE of other storage devices or similar containers for electronic evidence;

    g. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the SUBJECT DEVICE;

    h. Evidence of the times the SUBJECT DEVICE were used;

    i. Passwords, encryption keys, and other access devices that may be necessary to access the SUBJECT DEVICE;

    j. Records of or information about Internet Protocol addresses used by the SUBJECT

1

DEVICE;

k. Records of, or information about, the SUBJECT DEVICE internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses;

2. Contextual information necessary to understand the evidence described in this attachment.

3. Evidence of user attribution showing who used or owned the SUBJECT DEVICE at the time the things described in this warrant occurred, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.